# United States Court of Appeals
# for the Federal Circuit

_____

**STEPHEN F. YONEK,**
*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, Secretary of Veterans Affairs,**
*Respondent-Appellee.*

_____

2012-7120

_____

Appeal from the United States Court of Appeals for
Veterans Claims in No. 10-3320, Judge Alan G. Lance, Sr.

_____

Decided: July 8, 2013

_____

MICHAEL J. FLIBBERT, Finnegan, Henderson,
Farabow, Garrett & Dunner, LLP, of Palo Alto, Califor-
nia, argued for claimant-appellant. On the brief were
GARY C. MA, of Palo Alto, California and RONALD L. SMITH
of Washington, DC. Of counsel was HOLLY J. ATKINSON,
of Palo Alto, California.

TARA K. HOGAN, Trial Attorney, Commercial Litiga-
tion Branch, Civil Division, United States Department of
Justice, of Washington, DC, argued for respondent-
appellee. On the brief were STUART F. DELERY, Principal
Deputy Assistant Attorney General, JEANNE E. DAVIDSON,
Director, MARTIN F. HOCKEY, JR., Assistant Director, and
L. MISHA PREHEIM, Senior Trial Counsel. Of counsel on

the brief were DAVID J. BARRANS, Deputy Assistant General Counsel, and MARTIE ADELMAN, Attorney, United States Department of Veterans Affairs, of Washington, DC.

———————————

Before DYK, CLEVENGER, and MOORE, *Circuit Judges.*

DYK, *Circuit Judge.*

Stephen F. Yonek appeals from the decision of the Court of Appeals for Veterans Claims ("Veterans Court") holding that diagnostic code ("DC") 5201 only allows a single disability rating for each injured shoulder even though Yonek's shoulder manifests limitation of motion with respect to both flexion and abduction. We affirm.

## BACKGROUND

Section 4.71a of the Department of Veterans Affairs ("VA") regulations sets forth a schedule of disability ratings for injuries and diseases of the musculoskeletal system. *See* 38 C.F.R. § 4.71a. Within that schedule, diagnostic code 5201 prescribes ratings for limitation of motion of the arm at the shoulder joint. *See id.*, DC 5201. The code recognizes three levels of disability, based on the angle to which the veteran can raise his arm, and prescribes two possible ratings for each level of disability, corresponding to disability of the dominant ("[m]ajor") or non-dominant ("[m]inor") arm. *Id.* The disability ratings are expressed in terms of percentages, which "represent as far as can practicably be determined the average impairment in earning capacity resulting from" the corresponding disability. *See* 38 C.F.R. § 4.1. The code thus reads as follows:

| 5201   Arm, limitation of motion of: | Major | Minor |
|---|---|---|
| To 25° from side | 40 [percent] | 30 [percent] |
| Midway between side | 30 [percent] | 20 [percent] |

| and shoulder level | | |
| --- | --- | --- |
| At shoulder level | 20 [percent] | 20 [percent] |

*See* § 4.71a, DC 5201.

Yonek served on active duty in the U.S. Navy from May 1973 to May 1977, and again from January 1991 to March 1992. In June 1991, Yonek suffered an aggravation of a preexisting injury to his right shoulder, which left the motion of his right arm permanently limited.

Following his discharge, Yonek filed a claim for disability compensation. The VA regional office ("RO") granted service connection for the right shoulder injury, assigning an initial rating of 10 percent. Over the next seventeen years, Yonek underwent at least fifteen examinations, aimed at establishing the extent to which the injury limited his range of motion. These examinations measured his range of motion in two different planes: flexion (elevation of the arm in a forward direction) and abduction (elevation of the arm outward from the side of the body). *See generally* 38 C.F.R. § 4.71 & Plate I (illustrating measurements of arm motion). The examinations gave widely divergent results, finding a range of motion of anywhere between 80 and 180 degrees in the flexion plane and 60 and 180 degrees in the abduction plane. In September 1999, the RO increased its rating of Yonek's right shoulder disability to 20 percent, apparently concluding that the motion in his dominant arm was limited to a point at or below shoulder level but past the midpoint between the side and the shoulder—that is, between 45 and 90 degrees.

Yonek appealed to the Board of Veterans' Appeals ("Board"), which denied him a rating in excess of 20 percent for his right shoulder disability. *See In re Yonek*, No. 03-13 844, slip op. at 14-15 (Bd. Vet. App. June 21, 2010).

Yonek then appealed the Board's decision to the Veterans Court, where he argued that he was entitled to

separate ratings under diagnostic code 5201 for limitation
of motion of his right arm in the flexion and abduction
planes. The Veterans Court rejected his argument, con-
cluding that diagnostic code 5201 only allows a single
rating for limitation of motion, and that the plane in
which the limitation of motion manifests itself is irrele-
vant. *See Yonek v. Shinseki*, No. 10-3320, slip op. at 3
(Vet. App. Feb. 17, 2012).[1]

Yonek appealed to this court. Our jurisdiction in this
case is governed by 38 U.S.C. § 7292. We review the
Veterans Court's legal determinations de novo. *See King
v. Shinseki*, 700 F.3d 1339, 1345 (Fed. Cir. 2012).

DISCUSSION

The plain language of section 4.71a confirms that a
veteran is only entitled to a single disability rating under
diagnostic code 5201 for each arm that suffers from lim-
ited motion at the shoulder joint. The diagnostic code does
not provide separate ratings for limitation of motion in
the flexion and abduction planes, but rather is addressed
generically to "limitation of motion of" the arm. *See* 38
C.F.R. § 4.71a, DC 5201. Yonek indeed admits that "[t]he
text of [diagnostic code] 5201, viewed in isolation, . . . does
not explicitly provide for separate ratings," but argues
that "when viewed from within the context of the regula-
tory schedule, the regulatory schedule shows an intent to
provide for separate ratings of these movements." Reply
Br. 1.

---

[1]    The Veterans Court also affirmed the Board's de-
cision that Yonek was only entitled to a 10 percent rating
for a service-connected injury to his left shoulder. *See id.*,
slip op. at 2. To the extent that Yonek challenges this
decision on appeal, we lack jurisdiction to review it, since
it presents a purely factual issue. *See* 38 U.S.C.
§ 7292(d)(2).

But nothing in the remainder of section 4.71a suggests that diagnostic code 5201 does not mean what it says. Significantly, parts of section 4.71a addressing joints other than the shoulder assign different codes to limitation of motion in different planes, or to limitation of motion in different directions within a single plane. With regard to the thigh, for example, diagnostic code 5253 assigns a rating of 20 percent to "[l]imitation of abduction [to] 10°," while diagnostic code 5252 assigns ratings to "limitation of flexion" to various angles. *Id.*, DCs 5252, 5253. For the knee, diagnostic code 5260 sets forth a schedule of ratings for "limitation of flexion," while diagnostic code 5261 provides ratings for "limitation of extension." *Id.*, DCs 5260, 5261; *see also* Office of the Gen. Counsel, U.S. Dep't of Veterans Affairs, Prec. Op. 9-2004, *Rating Limitation of Flexion and Extension of the Leg* (2004) ("*General Counsel's Rating Opinion*") (holding that diagnostic codes 5260 and 5261 allow separate ratings for limitation of flexion and extension). Similarly, diagnostic codes 5206 and 5207 provide ratings for limitations of flexion and extension at the elbow joint, respectively. 38 C.F.R. § 4.71a, DCs 5206, 5207.

In light of section 4.71a's assignment of separate diagnostic codes to limitation of motion in different planes (or in different directions within a single plane) of the thigh, knee, and elbow, its failure to assign separate diagnostic codes to limitation of motion of the arm at the shoulder joint in the flexion and abduction planes is noteworthy. "Where [an agency] includes particular language in one section of a [regulation] but omits it in another . . . , it is generally presumed that [the agency] acts intentionally and purposely in the disparate inclusion or exclusion." *See Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (quotation marks and alteration omitted); *see also Heinzelman v. Sec'y of HHS*, 681 F.3d 1374, 1382 (Fed. Cir. 2012) (quoting *Keene*). The plain meaning of diagnostic code 5201, therefore, is that any "limitation of motion of" a single arm at the shoulder joint constitutes a single disability, regardless of the number of

planes in which the arm's motion is limited. *See id.*, DC 5201.

Nor does Plate I of section 4.71 suggest a different interpretation of diagnostic code 5201. Plate I "provide[s] a standardized description of . . . joint motion measurement," showing how the angles referred to in diagnostic code 5201 are to be measured. *See* 38 C.F.R. § 4.71 & Plate I. The fact that Plate I illustrates separately how to measure motion of the shoulder joint in the flexion and abduction planes merely demonstrates that limitation of motion in either plane may establish a compensable disability under diagnostic code 5201, *see Mariano v. Principi*, 17 Vet. App. 305, 317 (2003), and not that limitation of motion in both planes constitutes two separate disabilities.

Yonek cites three additional sources of authority, but none of these sources supports his interpretation of diagnostic code 5201. Section 4.25 of the VA's regulations provides that "[e]xcept as otherwise provided . . . , the disabilities arising from a single disease entity . . . are to be rated separately." 38 C.F.R. § 4.25(b). In order to determine whether the veteran has manifested two separate "disabilities" within the meaning of section 4.25, however, we must look to the diagnostic code under which the veteran was diagnosed. *See Smith v. Nicholson*, 451 F.3d 1344, 1350 (Fed. Cir. 2006). Here, the diagnostic code indicates that only a single disability is involved, regardless of the number of planes in which the motion of the arm is limited. Yonek also relies on section 4.45, which provides that in assessing disabilities of the joints, "the factors of disability reside in reductions of their normal excursion of movements in different planes." *See* 38 C.F.R. § 4.45. This general directive to take into account limitation of motion "in different planes" does not require the VA to create separate diagnostic codes. Finally, contrary to Yonek's assertion, the opinion of the VA's general counsel holding that "[s]eparate ratings under [diagnostic code] 5260 (leg, limitation of flexion) and

[diagnostic code] 5261 (leg, limitation of extension) . . . may be assigned for disability of the same joint" does not suggest that limitation of motion of the arm in different planes can be compensated separately under a single diagnostic code. *See General Counsel's Rating Opinion*, *supra*, at 4. That opinion was limited to the question of "whether rating *under more than one diagnostic code* is in order" when a veteran manifests various limitations of motion in the same knee. *See id.* at 3 (emphasis added). It does not suggest that two ratings are permissible under a single diagnostic code.

In this case, the plain language of diagnostic code 5201 governs, and allows only a single rating for "limitation of motion of" an arm. *See* § 4.71a, DC 5201. Any alleged error in the code itself is beyond our scope of review. *See Wanner v. Principi*, 370 F.3d 1124, 1129 (Fed. Cir. 2004) ("The statutory scheme . . . consistently excludes from judicial review all content of the [disability] ratings schedule . . . .").

We therefore affirm the decision of the Veterans Court holding that diagnostic code 5201 only allows a single disability rating for each affected arm.

**AFFIRMED**

COSTS

No costs.